Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning, everyone. Welcome to the fourth day of our sitting of the 11th Circuit out of Montgomery, Alabama. Judge Luck, Judge Brasher, and I regret that we weren't able to be with you in person in Montgomery, and we appreciate your cooperation in making it possible to do these arguments by Zoom today. If we experience any technical difficulties during the argument, you have contact information for our IT department, and they will make sure that we get back online quickly, and rest assured that we will make sure you get your full argument time today. You see on your screen a timer, which is where the numbers are green in color. When you have two minutes remaining in your argument, the numbers will turn yellow, and then when they turn red, we ask that you quickly conclude your remarks. Before you begin your arguments, you should know that we have read your briefs and important parts of the record, and we're very familiar with your cases, so you should feel free to jump right into your arguments. It's called the first case, number 20-14104, Closs versus Allstate. For the Turner appellants, we have Mr. Murdoch, and I see, Mr. Murdoch, that you reserve three minutes for rebuttal time. You may begin when you're ready. You may please the court. Good morning, your honors. This ERISA case, to be a bit redundant on purpose, is distinctly unique factually, not as to the reservation of rights clause, but as to the nature of the benefit and the arguments and evidence pertaining to the nature of the benefit. Imagine, if you would please, your honors, an ERISA plan that includes two provisions, a benefits clause that provides for a gold watch at retirement, assuming you've served 20 years, and another clause, and a reservation of rights and no vesting clause identical to the ones at issue here. Employees naturally would understand that the employer could change its plan at any time, during or even after their 20 years of service, their first 20 years of service, and they might not ever get that gold watch, but no employee would understand such a reservation of rights clause to logically, physically, plain meaningly, if you will, apply to a watch that they had already received under a prior retirement, at a prior retirement. That is, no employee would understand such a clause to allow a plan change, to take away a benefit that had already been delivered in completed fashion under the prior plan. So the question in this case is, what is the nature of the benefit at issue here? Because unlike health insurance, life insurance is particularly amenable to being a paid up, completed product, because its payout is known, and fixed, and actuarially predictable. Council? Council? Yes, sir. What does the summary judgment evidence say with regard to your client's knowledge that premiums were paid every month by Allstate? Post-retirement. Post-retirement. The record in this case reveals evidence from our employees' deposition testimony that they continue to receive. For 40 years, there was a track record of representations that this interest- Council, I'm gonna let you answer, give any argument you want. Oh, yes. No one's gonna limit you in that way, but I do want you to answer my question. My question is, post-retirement, what did the summary judgment evidence have to say with regard to your client's knowledge that premiums were being paid monthly or periodically by Allstate? Our clients had no such knowledge. Our clients- You're saying that there isn't testimony or evidence in the record for summary judgment purposes that at least some, if not all of your clients, received some tax information that monthly benefits were being paid or monthly premiums, I'm sorry, were being paid on their behalf? And I don't think it's in the record, but they received W-2 forms, a small percentage of them, that indicated under a little box called wages, which we suggest is not true notice. It's certainly not actual knowledge for purposes of the statute of limitations. Well, I'm not talking about the statute of limitations. I'm only asking for summary judgment purposes. You're talking about the nature of the benefit and it being the gold watch. Yes, sir. My question to you is, if there is summary judgment evidence that suggests that it's not a watch, but it's a dial on one month and a number on another month and a link for the band on another month, that that is not something that, when told you're not vesting and you don't own or have those things and that it could be taken back retroactively at any time, that that is not actually a full gold watch that you get in retirement? Yeah, we don't believe, for example, the W-2 statements you referred to gave employees that kind of knowledge or notice, whether for substance or for the statute of limitations. All right, let's take your hypothetical on its face then. So I'll assume for the moment that you're right, that there isn't summary judgment evidence, which suggests or says that your clients knew or should have known that premiums were being paid and it wasn't a gold watch. So let's assume it's a gold watch. Right. If you're told at the time that you have your gold watch, that you do not vest or you have no vested right in that gold watch and that that gold watch can be taken from you retroactively at any time at the complete discretion of Allstate, is it not reasonable to assume that when they come and say, we'd like our gold watch back 10 years later, that you had knowledge of that? Yeah, if they said that, if they said that, then yes, we would have knowledge of that. But our position, Your Honor, is that in all logic and plain meaning, the language of a no vesting or a reservation of rights clause could not reasonably be understood as applying to a benefit that had already been delivered in completed fashion under the prior plan, for i.e. an executed benefit. Can life insurance ever be given in that way that you've just described until you die? Yes. In other words, until the act is completed, how is life insurance given? Right. Obviously, there are different forms of life insurance, but here's the thing about life insurance. And most of their cases, many of their cases deal with health insurance. But life insurance, unlike health insurance- We have precedent on life insurance, don't we? We do, but none of those cases are like the case we have here today. Unlike health insurance, Judge Locke, life insurance is particularly amenable to being a paid-up, completed product. And in fact, there is such a thing as paid-up life insurance. In fact- Here's the issue, but here's part of the issue. Okay. Let's take viaticals, which aren't as popular now, but they were at one time. There's a whole industry of you selling your right to life insurance up until the time you get life insurance. In other words, there's an entire market for what that is. So because it's not completed until it's done. So it's hard for me to understand that even something that's paid up isn't itself contingent and can be taken back or clawed back retroactively, where you're told it can be clawed back retroactively. Well, we suggest that that's not what the reservation of rights language, when read in its plain meaning, could possibly be talking about because life insurance can be a paid-up product. The Economic Research Institute defines group paid-up insurance as exactly what we have here, Your Honor. An insurance plan in which both employer and employee make contributions. And at retirement, a smaller amount is kept by the employee as quote, paid-up unquote insurance. That's exactly what we have here. And unlike health insurance, which you hardly ever see in paid-up form, there is such a thing as a paid-up completed insurance benefit. That is what we have here. And that's what makes this case different on both its facts and the arguments presented than any other case. We think that the Summary Judgment Court is about to explore the meaning of the bare term retiree life insurance. When on page 21, she says this, the Summary Judgment Court, I'm sorry, it says this, all state undisputedly made representations to the plaintiffs at various points in time that the retiree life insurance was permanent for the rest of their lives and paid up. And indeed, all state admits that in their brief, that it was permanent, that they made these representations and they meant them when they made them, that it was permanent. Mr. Murdock, what's your best authority to say then express reservation of rights to modify or terminate a RESA plan can be read to be ambiguous based on extrinsic evidence like the representations you're talking about? There are quite a few, Your Honor. Excuse me. What's your best one? Because I didn't- Well, you would start, of course, I think you start with Tackett. You start with Tackett, which says that you apply ordinary contract principles. Ordinary contract- If the language is unambiguous, then we don't resort to extrinsic evidence. Do you agree with that? No, ma'am. I do not. Justice Ginsburg, first off, explains that you do use extrinsic evidence to resolve any ambiguity, but there are other cases- But before that statement, and this goes directly to what Judge Pryor is asking you, right before that statement, she says where it's unambiguous, we don't go any further. And that is exactly what Justice Ginsburg says. I didn't read her comment to say that when it's ambiguous, we don't go any further. If there is extrinsic evidence, that causes it to be unambiguous because what was not addressed by Justice Ginsburg per se, but what is addressed in many other federal cases is the federal law, the federal common law of contract. And one of the ordinary contract principles that is embedded in the federal law of contract- Here's- Counsel, if I could just go back. I just pulled up the opinion right here. This is on page 443 of the opinion. When the intent of the parties is unambiguously expressed in the contract, meaning in the terms itself, that expression controls and the court's inquiry should proceed no further. How do I read that to mean outside of something in the contract that we would look to that to create an ambiguity? Your Honor, if that statement is taken literally at 100% base value, that would mean that there could not be a latent ambiguity. That would mean that there could not be two ships named Peerless. That would mean that the term retiree life insurance, the bare term retiree life insurance, if there is an industry practice of having both paid up, completed- But Peerless is a mutual mistake case. It isn't an ambiguity case. No one's saying that there's a mutual mistake that was made that defeats the contract. We're asking for an ambiguity in the language of the contract. That's the question. But, okay, well, leaving Peerless aside, the fact remains, if you take that literally and you do not allow for extrinsic evidence to reveal a latent ambiguity, then you have distorted the ordinary contract principles that Tackett says you apply. It's just that in Tackett, there was not this issue that we have here. In Sears, in Meadows, in Allday, in Snow, in the New Valley case, the federal common law of contract, quote, includes the principle that extrinsic evidence can be used to determine whether an ambiguity exists. But New Valley's a top hat plan, right? Yes, sir. Yes, that's a little different than what we have here, right? Well, it's conceptually, but the logic and the plain meaning of the English language and the dynamics really are applicable. Cigna, the 2011 case from the U.S. Supreme Court is one in which the U.S. Supreme Court says that 502A1, the contract- Before you sit down, Mr. Murdoch, are you arguing that there's any ambiguity on the face of the provision of the Reservation of Rights? Your Honor, I'm glad you asked that. We admit for purposes of today's argument that the Reservation of Rights Clause, the Reservation of Rights Clause says what it says. It's unambiguous. The question is whether such a clause can logically and plain meaningly apply to a benefit that has already been delivered in completed fashion and executed benefit under the prior plan, as opposed to, and this is what's true in every other case that we've seen, not one of the cases like ours, every other case has an executory promise to provide in the future, to continue providing or renewing a benefit into the future. Cigna says that a court can look outside the plan's written language. Can I ask one further question? You may, yes. What do we make counsel putting tacit aside of our Aldi case, where we say, quote, the SPD, we all know what that is, unambiguously set out the rights of the parties, including the company's right to terminate or modify the plan. Accordingly, there is no need to refer to other communications between the parties to determine the party's intent. Isn't that a statement by us that we don't look outside where the terms of the SPD are unambiguous, including the right to terminate? Tacit and Aldi has some similarity in that regard, Your Honor, because both of them only addressed the issues that were before them. And in Aldi, to answer your question, the court takes pains to note in footnote 15 at the very end of its opinion, we note that our holding does not insulate from liability a fiduciary who makes fraudulent promises in informal communication. Counsel, there's no allegations of fraud here. It does say that, but there's no allegations of fraud. Oh, yes, sir. Oh, yes. This is absolutely a fraud case. Yes, sir, it's absolutely a fraud case. For 40 years, they've made representations that this would be paid up permanent in writing and orally. And they never corrected that from the time that they stopped, according to the record- Well, let me ask you this, counsel. Is there summary judgment evidence, and Judge Pryor, I appreciate your indulgence. Is there summary judgment evidence that suggests at all that Allstate made the statements that it made, including those in the SDP, that they were lying at that time, that those were fraudulent at that time? Any summary judgment evidence at all? That they were lying when they did what, Your Honor? When they made the statements they made. They, in order to avoid a breach of contract claim, they claim- I'm asking about fraud. Is there any evidence that they made at the time they made the representations that they intended to lie or intended to deceive? Well, the fact that they came along in 2013 and said, you know, we've told you this for 40 years leading up to 2006. And the last 16 of those years, we had a reservation of rights clause in our plan. And basically, despite Judge Watkins' rationale that no one could reasonably read that clause as overcoming the extrinsic representations or applying to something that, as Judge Watkins so powerfully explained, was a paid-up finished benefit, Allstate came in in 2013 and said, despite that 40-year track record, despite the fact that we continue telling you this up until, according to the record, at least 2006, and despite the fact that we haven't said a word since 2006 in any letter to change that representation, we're now going to tell you, no, it wasn't really paid up all along. It wasn't. And we have to, in fact, Allstate as fiduciary inherently had to reinterpret its plan in 2013 or else its money-saving scheme would not have worked. It came along in 2000. So you can say it reached its fiduciary duty by going against a true representation for 40 years, or you can say it made this representation carelessly and then went back to what it thought was the truth afterwards to create fraud. But they're caught coming and going. They can't have it both ways. Thank you, counsel. Thank you, Your Honor. Mr. Murdoch, you were answering the court's questions, so we will give you your full three minutes for rebuttal. Thank you, ma'am. Mr. Pearl for the Closs Appellants. Yes, thank you, Your Honor, and may it please the court. I, of course, echo Judge Murdoch's remarks and thank him for his participation in this important case. Distinct from his case, however, our case involves an early retirement program, which all state the Special Retirement Opportunity, or SRO, which it offered to its home office employees in 1994, and which included a written agreement, a waiver agreement, which waived the employees' legal rights in exchange for statutorily required new and, we assert, non-cancelable consideration. All of the SRO employees performed their obligations under the SRO offer, which was a unilateral contract, and under basic contract principles, their performance benefits being conferred could no longer be withdrawn. The statute at issue is the 1990 amendment to ADEA in the form of the Older Workers Benefit Protection Act, which I'll call the Act, which allows employees to offer buyouts to older workers without risking age discrimination claims. The Act specifically requires new consideration to be provided in exchange for that waiver of rights under ADEA. It is this law, which we claim is violated, if an employer is permitted to cancel the very consideration offered for early retirement, as Allstate has attempted to do here. Counsel, did every one of your clients get a payout? Did they receive the salary continuation? Yes, they did. Okay, so there's been consideration given to every one of your- Right, and respectfully, Your Honor, the issue is not whether some consideration was given. The issue is what does the Reservation of Rights Clause mean when Allstate says it has the right to cancel any of these plans benefits at any time? And it cannot mean what Allstate says and what the lower court ruled, because if it did, that would mean that Allstate had successfully violated the Act. Let's assume that I agree with that theory. Does the fact that it at least applies to the life insurance matter when your clients actually did get the full other benefits that they were promised as part of the early retirement plan? Yeah, yes, it does, because it's the interpretation of the clause, all benefits are subject to modification or termination at any time, which is an issue. So Allstate was saying even the life insurance is cancelable at any time. And the question becomes, is that a reasonable interpretation or is it ambiguous? Because an equally reasonable, if not even more reasonable interpretation is that the anytime language referred to at any time prior to performance, prior to acceptance by the employee. That is what our position is, that an interpretation which would result in an unlawful- Counsel, didn't the plan though refer back to the original SDP for life insurance, which specifically said that it could be retroactive? It did, and Your Honor, let me jump now to I think which a vital point here. The SRO details booklet, which we claim is a plan document. It's got all the indicia required by law to be such, contains in its very body at the very end, this waiver agreement. The waiver agreement interestingly has language required by statute that says that I agree that I am receiving new benefits that I was not otherwise entitled to. And then it says that this is the entire agreement between me and Allstate. In other words, it contains an integration clause, which means that the SBDs, as well as any other language regarding reservation of rights is irrelevant. As the court knows, an integration clause means that you cannot vary the terms by reference to something external to the agreement. So the waiver agreement- I see your summary plan description for details. Right, but then what happens is that's superseded, Your Honor, by the waiver agreement, which has the integration clause. So we can ignore all of that. Interestingly, Allstate had a duty under the act to clearly identify what its rights and obligations were for its employees. It did not contain a reservation of rights clause in the waiver agreement itself. And as a result, it's our position that- But it didn't- With everything else. But didn't it in the fact sheet, in the details booklet, and in the summary plan description, in all three? Yeah, they had reservation of rights language, which we claim is ambiguous because it would be violative of law if Allstate could cancel these benefits. But even so, our belief is that the integration clause takes those other statements out of the picture because they're not part of a written agreement between the parties. Thank you. And what I would ask the court to focus on is that it cannot be a reasonable interpretation under these circumstances, without resort to extrinsic evidence, within the terms of the SRO, for the employer to say, essentially, we are giving you these rights in exchange for your early retirement, but we reserve the right to remove them all, any or all, after you retire, after a fait accompli. It would be a completely irrational interpretation. And I think as a result, this court is faced with the question of whether or not to sanction a result, which would allow employers to violate the act by giving a benefit with one hand and taking it away another. In other words, the statutory construct to allow employers to offer early retirement and obtain ADEA waivers would be suspect if this court were to sustain the ruling below. And finally, I don't know if I have any time left, apparently not, but I would ask the court to reverse and to ensure that the people who relied on the goods hands people did not rely in error. Thank you very much. Thank you, Mr. Pearl. Mr. O'Brien. May it please the court, Stephen O'Brien on behalf of Allstate. And so to pick up where Mr. Murdoch started, let's just be clear. Plaintiffs are seeking lifetime vested benefits based on promises that are not in the governing plan documents at all. And the plan documents are now unambiguous as to the reservation of rights. Allstate believes that this case is governed by six cases, three, six ERISA cases, three unanimous decisions of the U.S. Supreme Court and three decisions of this court. That would be starting with Curtis Wright in 1995, the Supreme Court, then going to Tackett and MG Polymers in 2015. And perhaps most importantly, the C&H Industrial Rees case in 2018, which is following on and clarifying Tackett. But then the 11th Circuit cases that we would stress are the Sheena case from 2007 that focused on the plan documents, the Jones case, which was a life insurance case, very much akin to this case, particularly on the 502A1B aspects of the case. And then as the court has already been discussing the all day decision from 1990. To pick up where this case should start, we should go back to the Supreme Court in Curtis Wright in 1995, where the unanimous Supreme Court said, ERISA already has an elaborate scheme in place for enabling beneficiaries to learn of their rights and obligations at any time, a scheme that is built around and reliance upon the face of written plan documents. It is the written plan documents that govern here. And if this case, if Judge Marks is found to be in error and that this is not fit grist for the summary judgment mill under rule 56, we are calling into question such basic contract notions as the statute of frauds and the need for a written document, statute of limitations, and the reason why memories can fade and how long we can go back. And as I believe the Supreme Court said, we would be creating a floor of benefits where employers would be faced with the prospect of promises given years ago, coming back at them and creating lifetime benefits. And then- What do you say about, I mean, what do you say about the fiduciary duty, the breach of fiduciary duty claim, which I sort of characterize as the fraud claim? I mean, I'll just tell you, from my perspective, I mean, I think that the district court summary judgment with respect to the reading of the documents themselves is persuasive, but at the same time, a ERISA plan administrator can't promise one kind of benefits that they have no intention of providing. Now, the district court apply the statute of limitations to that claim. So what do you say about that? Well, there is no evidence that the representations were made without the intent of providing the benefits as well. I mean, I don't know if I agree with that at all, really, because the language used was paid up life insurance, and there was never any intention to have life insurance that was fully paid up. I mean, the life insurance was always gonna be insurance that was paid on a premium basis. The premiums were gonna be continuing to be paid. So, I mean, it seems like one thing was promised, paid up life insurance, and that was never provided, and there was no intention of providing that at all. I mean, am I wrong? Well, if the court wants to draw those inferences from the facts that are there on summary judgment, I don't think it still gets you to the point where you're going, because I think the statute of limitations is going to kick in. You still have issue about the reservation of rights and the fact that no benefit's vested. And if this is a matter of not- So, counsel, on the statute of limitations issue, and piggybacking off of where Judge Brasher left off, the district court says the last misrepresentation was made in 2006. That's what the evidence shows. And this claim was filed in far later than that, and so we're outside the six years. But the way the statute is written, it says the last act. It's the earliest of the last act of one thing or the other thing. Why is the last act not the 2013 letter or decision stating, hey, we're not going to do what we told you we were going to do? So it's not a matter of not doing what we were going to do. And I think the Unisys decision from the Third Circuit is your answer there. ERISA and the fiduciary duty breach does not require a duty of clairvoyance and predicting what the future is going to bring. I'm not talking about the merits of the claim, because we're not at the merits of the claim. I might agree with you on the merits. I'm simply talking about if we're discussing the elements of a claim, when is the last act of a breach of fiduciary duty? Is it not when you were told we will not be living up to the alleged promises that we made? Well, but when were they told? So under that reading of the facts, Your Honor, when would that have been? So representations are allegedly made that you're getting paid up insurance. And from 1990 forward, when these people started to retire, when they were first eligible for retiree life insurance benefits and any other benefits, they are told undisputedly, unambiguously, the company reserves its right to modify, terminate, change the plan at any time, which is essentially backed up by ERISA case law, and that you don't have a vested benefit. There is no ambiguity. I know, but counsel, you're not quite answering my question. So simply on the face of statute of limitations, you're speaking of the merits of the breach of fiduciary duty claim. And again, on the merits, I might agree with you, but we're talking simply about the breach of fiduciary duty. The allegations are that, and the evidence at least shows that from the time that some of these folks were hired in the 70s, at least through 2016, they were told explicitly, we are getting either permanent or paid up insurance, life insurance for you. The last representation that the evidence shows was made in 2006 at some Roanoke conference that at least some of the plaintiffs were at, right? Correct. We all agree on that. Now, the district court said that means that that ends it and we're well beyond the six years. My question is, why is then when in 2013, Allstate sends the letter and says, we are not in fact going to be providing any more life insurance. We are going back. Why is that not the last alleged act? I understand as a matter on the merits, you think that all of this fails, but why is that not the last alleged act for statute of limitations purposes in completing the breach of fiduciary duty claim? Well, I would still go back to Unisys and Clairvoyance and the court may not think that I'm directly answering the question, but the issue is, are we making representations about paid up insurance at the same time we're putting in plan documents that said you don't have a vested right to any life insurance benefit whatsoever that we can cancel the whole program. And the evidence is that the company wasn't even thinking about or knowing about canceling the benefit until 2012, which was effectuated in 2013. So to say that there was a scheme, a fraudulent scheme all along, that's only completed in 2012 or 2013, when there is no evidence of any connection between the representations that were made, the plan documents, the reservation of rights and the vesting, and then the ultimate decision in 2012 and 13 to cancel the benefit. There just is no tie there such that there could have been all along this scheme. And I think the evidence that's most important here that Judge Mark did focus on, but I'm not sure it's explicitly clear in the summary judgment evidence is what bothered Judge Wilkins on the preliminary injunction and going to what Judge Brasher's concern was, which I think was Judge Wilkins concern about, were the retirees properly put on notice that the life insurance benefit for retirees could be taken away at some point in time. Were they ever put on notice there? And of course, all states says reservation of rights is consistent from 1990 forward. But what's most important is look at what happened in 2005 forward. And this is getting close to Judge Luck, the end of the representations that you're concerned about, which we talk about ending in 2006. But to Judge Brasher's concern here, what happened in 2005 is that there were explicit SPDs for the retiree life insurance plan, official governing documents that are provided in January of 2005. And that document had in it a reservation of rights and a no vesting clause. What possible benefit could retirees have been told about that they might lose that they didn't have a vested interest in? I guess here's the issue I have. Here's the issue I have. I think, I mean, if there weren't such a thing in the world as life insurance that you can just buy and not have to pay additional premiums on, then I think that your position would make sense. But one of the things that you can buy right now, you can go out in the market and buy it right now, is just life insurance, where I say like, I want you to cover my life. Here's however much money that takes. I don't owe any additional premiums. You're just gonna pay out life insurance when I die. That's something you can buy. That is a different product than ultimately what was provided to these people. They were provided something where premiums had to continue to be paid. And so the fact that you told them at various points, well, there's not vesting, we reserve the right to change this, really doesn't go to the issue here, which is that they were told they were getting one kind of thing, and it turns out they were getting a different kind of thing. And at least in my view. Well, I think it's the same issue, your honor, because if the issue is not really in terms of breach of fiduciary duty because of a misrepresentation, but breach of a fiduciary duty because we bought the wrong product. What was the lie about the product that you were providing? I mean, that's the point. Here's my question. Let's assume that this is a gold watch situation. So let's assume, let's go to Justice Murdoch's hypothetical about the gold watch and assume this is a gold watch situation. Wouldn't the last act, the sort of the problem that the breach of fiduciary duty or in the case of fraud or concealment, when you discovered the violation be when the employer said, you know what? That gold watch we gave you at your retirement turns out it's still ours and we need it back. I mean, wouldn't that be when the employee would say, okay, well, I didn't know that. I mean, I didn't know that. That would be the last act. That would be when I discovered the fraud or concealment because you told me you were giving the gold watch and then you never gave it to me and it was yours all along. I'm going to disagree with you, Judge Breister. Just stay with the hypothetical of the gold watch, I guess. Certainly. But if the representation is made early on and then the product was not purchased or not known, and this goes to what Judge Luck asked Mr. Murdoch, Judge Murdoch initially in the case. And that is what evidence is in the record about whether the plaintiffs knew what they were getting. And there actually is some evidence. We certainly do have Judge Marks talking about the W-2s that are there. I think Mr. Murdoch's recollection is not accurate. I think Mr. Bentley, one of the named Turner plaintiffs did testify in deposition that he was aware that premiums were being paid. And third, I think as Judge Marks noted, plaintiffs in the complaint, in the Turner complaint at paragraph 59, alleged that they were aware that premiums were being paid. So there is knowledge, Judge Breister, that the plaintiff knew way back since retired that they didn't have a product that they thought they were getting. And so the clock would have started at that point in time. And that's the reason we still go back to Curtis Wright and the fact that the benefit that we're talking here has to be found in the written plan documents. And if they're saying we bought the wrong product, we didn't give them the gold watch that they were entitled to, it was not gold plated after all, or it was only gold plated and was not solid gold. They had the plan. They had the policies. They could have looked at the policies for 25 years and determined that they didn't have the actual insurance policy that they wanted. But I submit to the court, that's not the issue here. Plaintiffs have not complained about getting the wrong insurance product. They've complained about losing the life insurance benefit at the end of the day. That's what this case has been about. And that's why the focus should be on the written plan documents, what's actually there. And- Well, I'm not sure Judge Watkins at least framed it that way. I think Judge Watkins framed it as Judge Bratcher has framed it, which is the promise of one type of insurance and not getting another type of insurance. Now, I think you're probably right that if Allstate continued to pay, would we be here? Probably not because what does it matter if you're getting a premium based or a paid up base? But I think, I don't know that it's right to say that the claim is simply, it's not life insurance at all. I think it's fair to say the claim is we were promised paid up or permanent at that time and it should have existed at the time at least that we retired. I don't disagree with you. And I didn't mean to suggest that I did. But again, I think it's a distinction without a difference because the benefit has to be found in the plan itself. It has to be explicitly in the plan. And they had the plans from 1990 forward. They had the summary plan descriptions from 1990 forward. If there was a problem with the insurance benefit that they were being provided, they had every opportunity to figure this out. It's not a matter of a last act in 2012 or 13. It's a matter of when I retired, I didn't get the insurance product I thought I was getting. Now, I guess I should address briefly the SRO, the special retirement option, a benefit of Mr. Perl and the class plaintiffs here. This one though, I think it's very straightforward. And I think that the consideration for the special retirement option is distinctly different. And while it provides a benefit for employees such that they can retire early, it doesn't rejuvenate all of the old consideration that you get when you retire. And so the retirement benefit of the SRO was the three errors of extra eligibility that it provided. It was not the underlying life insurance itself. And that's the reason why the SRO detailed booklet defers to the summary plan descriptions for other benefits as needed. Because the special retirement opportunity is not providing the life insurance benefit, it's providing the three years of eligibility. Mr. Perl's best argument, I think is, and I'm speaking just for myself, is that if this all was we could take it away, then isn't the promise illusory? And doesn't that violate the very reason for the waiver of the Age Discrimination Act? That's his argument. And it seems to be, I think, his best argument. Why is that wrong? Well, because the consideration for the SRO, the SRO, again, cannot create the vested benefit itself. And I think Sheena and MetLife is probably the best case for the court to look there, where you have a pension benefits for an employee who is gonna switch companies. And he's promised full pension benefits, and he's given a transfer agreement that provides for the benefits. But, and while he got the eligibility and the duration benefits, he didn't get the full time credit at the end. And he's complaining about the amount of his pension benefits that he's getting. But it's not found in the written plan document. Well, again, I understand the point you're making, but I would like you to address, assume for the moment that we think that at least with regard to the plan booklet or in some other document, there is a promise made of the insurance, and that there's the reservation of rights clause, which says we can take it all away retroactively at any time. Is that not an illusory benefit, such that there can't really be a waiver under the discrimination act? In other words, there has to be some benefit that gets you the waiver. Well, one, it wasn't an illusory benefit. These parties got 25 years of insurance. I know that under your analysis, you could have stopped that at any time. So what consideration did they get? If it was just a, you know, we actually, there's no counter promise whatsoever. We promise to do nothing. We may do it at the goodness of our heart. That's not consideration, right? I mean, that's literally textbook, contract textbook, not consideration. So what did they get besides a gift from Allstate? Maybe they got something. I don't know, what did they get? Well, not, well, hundreds of thousands of dollars. They actually got the salary enhancement benefit. They got the additional enhanced pension benefit. They got- I guess the question that Judge Brasher is asking that I was less articulately trying to ask is, can't Allstate take that away at any time? Since the SRO has to defer back to the reservation of rights and the SPD of the plan documents, yes, because the plan documents where the life insurance- How is it not illusory in the sense that, yes, they were paid, but they were only paid because Allstate decided not to go back and do it. I would agree with the court that at that level, Allstate could have said day one or day zero, there's no more life insurance benefit. And the SRO would have the three years of eligibility- Or no more one-year paid or all the other benefits that were in the plan, right? Well, I don't agree with that. I don't think that those, in fact, those weren't taken away, but I don't think the three-year eligibility for the life insurance was not taken away. Could they have been taken away under this reading? If any means any, and it applies to all benefits, could those other things have been taken away? In other words, could we be here on those benefits just like we're now here on life insurance? I don't think so. And I don't think any of them were taken away, including the three-year eligibility. I don't know the answer to this question, so this is the reason I'm asking. What's the difference between why you would say we can end these benefits now under the no vesting clause versus the other benefits that you're talking about? The three-year eligibility and whatnot. What would be different about those that would prevent, under your reading, Allstate from just saying on day one of the retirement, we can also just end these things? I think Allstate could have terminated dental benefits, vision benefits, other benefits that are provided in its other plans that are not even mentioned in the SRO itself. I would agree with you. Those plans are subject to the reservation of rights and the vesting provisions, just like the life insurance was, and could be terminated. So maybe you have an answer to this question then, which is, if that's the case, if all of this was just basically a gift promise, so there is no binding requirement at all that Allstate provided any of this stuff, what do we do with that? Does that support, Mr. Pearl, or are you saying that maybe that would have just been a violation of some other statute or something? I don't know. Well, the court's talking about hypothetical violations that did not occur. And so the SRO benefits, all of the SRO benefits were fully provided. And so there's not a claim for breach of those, and I don't think there could ever have been a claim for breach of those. We believe Judge Marks appropriately granted summary judgment. The summary judgment record here, as voluminous as it is, I think she considered all facts that were presented, literally all facts. And I think she appropriately applied the Rule 56 standards, and we would request that the court affirm. Thank you. Rebuttal, you have three minutes. Your honors, there is no case, no case applying a reservation of rights clause or no vesting language to a paid up insurance benefit. The summary judgment court never stopped to examine whether the evidence in this case would amount to a reading into the bare term, retiree life insurance and the summary plan descriptions of the concept of paid up. Sears and Jones suggest that it would make a difference. In Sears, the parent company of Allstate, the language contained this, the clause, I'm sorry, the plan contained this language. Benefits under this plan do not provide paid up insurance. They didn't choose to put that in this plan. In Jones, the Jones court quotes Musto as saying, to say that this insurance can never be changed, this health insurance could never be changed, is to read into the plan, the concept of paid up. That's exactly as we discussed what should be read into this plan. For 40 years, Allstate employees heard these representations. The entrenched effect of those representations orally and in writing stretching into 2006 did not dissipate the day after their last utterance. There is no serious argument that the retirees of Allstate had actual knowledge before 2013, none. Yes, there was the reservation of rights language that they started putting in the plan in 1990, but during that same timeframe, they were still making these extrinsic representations that this was a paid up insurance and that should be measured against the bare term retiree life insurance in the plan. Your honor, your honors, the other day I heard a correspondent use the word gobsmacked. That's not a term we use very much and I looked it up to make sure. And it means astonished, as if someone has just hit you in the face with unexpected bad news. And I can tell this court, the retirees of Allstate were gobsmacked in 2013, when five, 10, some of them 20 years into their retirement, they received the news that the insurance they had always had was being taken from them. As your honors know, the law does not speak into some antiseptic four corners version of life. The law speaks into real life and the lives of real people and it should reflect real life and the way real people talk and understand the English language. ERISA was designed to protect real people and to make sure retirees are treated justly. And there is nothing in ERISA that prevents this court under the distinctly unique facts of this case from doing exactly that and making sure that the retirees of Allstate are treated justly. In fact, ERISA calls on this court to do exactly that. Thank you, your honors. Thank you, counsel. We understand your arguments.